TRAXLER, Circuit Judge,
concurring in part and dissenting in part:
. Calla Mejia was in front of the immigration judge with her lawyer. She made a motion for asylum.-The judge was ready to rule. However, Calla Mejia opted instead to withdraw her motion for asylum and to waive ,her right to appeal the asylum issue. The immigration judge therefore did not rule on the asylum issue. No appeal was taken to the BIA. Yet somehow we are now ruling on the asylum issue that Calla Mejia raised and abandoned. We have no jurisdiction to do so and I dissent.
I.

Calla Mejia’s First Illegal Entry Into the United States

Calla Mejia first illegally entered the United States in April 2015, crossing the Rio , Grande near Laredo, Texas. She was immediately apprehended and questioned by a border patrol agent. When asked why she entered the United States, Calla Mejia told the agent she wished “to reside and work in New York, New York,” J.A. 217, and denied that she would “be harmed or face persecution” if she returned to Peru, J.A. 218. The agent determined that Calla Mejia was inadmissible and placed her, *591 initially, in expedited removal proceedings. See 8 U.S.C. § 1225(b)(1). After she had been detained for some period of time, however, Calla Mejia expressed a fear that she would be harmed if she were returned to Peru. Therefore, an Asylum Officer (“AO”) conducted a credible-fear interview. See 8 U.S.C. ■§ 1225(b)(1)(A); During the interview, Calla Mejia indicated that she was afraid to return to Peru because her husband routinely abused her physically and even threatened her with death. Calla Mejia claimed that she reported this abuse to the police, but that they took no action because her husband was a police officer. She also claimed that she could not avoid her husband’s abuse by relocating to a different part of Peru—she believed that his position as a police officer would enable him to find her. When asked why she initially told the Border Patrol agents that she “did not fear returning to Peru,” Calla Mejia responded that she did, in fact, tell the Border Patrol agents that she feared returning to Peru, but that the agents stated they “[did not] care.” J.A. 214. Following this interview, the AO concluded that Calla Mejia had a credible fear of persecution in Peru on account of her membership in a particular social group, see 8 U.S.C. § 1225(b)(l)(B)(ii), and referred her for a full removal proceeding during which she could seek relief from removal, see 8 U.S.C. § 1229a.
DHS issued Calla Mejia a Notice to Appear, charging that she was removable as an immigrant who did not possess a valid entry document “at the time of application for admission.” 8 U.S.C. § 1182(a)(7)(A)(i)(I). On June 10, 2015, Calla Mejia appeared pro se at a Master Calendar hearing before an immigration judge “to determine whether or not those facts and allegations [in the Notice to Appear] are true and correct." J.A. 545.
The Immigration Judge offered Calla Mejia an opportunity to consult an attorney before continuing with the removal proceedings, but Calla Mejia declined and indicated she wanted to proceed on her own. Calla Mejia admitted the allegations set forth in the Notice to Appear and conceded that she had entered the United States “illegally.” J.A. 561. After the immigration judge determined that Calla Mejia was removable, Calla Mejia identified Peru as her preferred country of removal.
Calla Mejia did not apply for relief from removal and waived any appeal from the proceedings. The immigration judge asked if there was “any reason [she could] not return to Peru,” and Calla Mejia stated that she “told the officer [she] was fearful [of] returning to [her] country.” Id. The immigration judge noted that Calla Mejia would have a serious “credibility problem” because she had “told the first officer [she was] going to live in New York for five years and [she was] not afraid to return.” J.A. 562. Nonetheless, the judge indicated that if Calla Mejia wanted to apply for asylum, withholding of removal and protection under the Convention Against Torture, the court would “allow it.” Id. Calla Mejia stated that she did not wish to apply for relief from removal, that she understood the order of removal was final, and that she did not wish to appeal.
The immigration judge entered a final order of removal on June 10, 2015. Before executing the order of removal, DHS issued to Calla Mejia a standard Form 1-294 Warning to Alien Ordered Removed or Deported, which admonished her that-she was “prohibited from entering, attempting to enter, or being in the United States” “[f]or a period of 10 years from the date of [her] departure from the United Statés.” J.A. 13. Additionally, the Form 1-294 issued to. Calla Mejia provided, in bold font, the following:.
WARNING: Title 8 United States Code, Section'1326 provides that it is a *592 crime for an alien who has been removed from the United States to enter, attempt to enter, or be found in the United States during the period in which he or she is barred from so doing without the Attorney General’s consent. Any alien who violates this section of law is subject to prosecution for a felony. Depending on the circumstances of the removal, conviction could result in a sentence of imprisonment for a period of from 2 to 20 years and/or a fine of up to $250,-000.
J.A. 13. Calla Mejia was removed to Péru on June 22, 2015.

Calla Mejia’s Second Illegal Entry and DHS’s Reinstatement of the Prior Order of Removal

Calla Mejia waited for about two months before illegally crossing the .Mexican border into the United States for a second time. On August 19, 2015, she was apprehended by border patrol agents near Laredo, Texas, once again. On August 21, 2015, DHS served Calla Mejia with a Form I-871 indicating that because she had unlawfully reentered the United States after having been previously removed, she was subject to removal by reinstatement of her prior order of removal pursuant to section 241(a)(5) of the Immigration and Nationality Act (“INA’). See 8 U.S.C. § 1231(a)(5). Calla Mejia signed an acknowledgement indicating that she did “not wish to make a statement contesting [the] determination” that she was removable. J.A. 201. DHS thus issued an order on August 21, 2015, concluding that Calla Mejia was “subject to removal through reinstatement of the [June 10, 2015, order of removal], in accordance with [8 U.S.C. § 1231(a)(5) ].” J.A. 201.
Before DHS could execute the reinstated order of removal, however, Calla Mejia again expressed a fear of returning to Peru. DHS therefore referred her to a USCIS AO for a reasonable-fear interview “to determine whether [she] should be referred to an immigration judge to apply for withholding or deferral of removal.” J.A. 178. The AO informed Calla Mejia that she had “the right to have an attorney or representative present,” but Calla Mejia declined legal, representation and asked to “[pjroceed” with the interview. J.A. 177. Calla Mejia then told the AO about physical and mental abuse she suffered at the hands of her husband, and about her inability to seek protection from the authorities because of her husband’s employment as a police officer. She believed that if she ever returned to Peru, her husband would find her, “[m]istreat [her], hit [her], even kill [her].” J.A. 193. The AO determined that the interview testimony by Calla Mejia “established that there is a reasonable possibility of suffering harm constituting persecution in the country to which [she] has been ordered removed ... on account of .., membership in a particular social group.” J.A. 176. Accordingly, the proceedings against Calla Mejia were referred to an immigration judge “for a determination in accordance with 8 CFR § 208.31(e).” J.A. 595.

Calla Mejia’s Application for Asylum

Calla Mejia obtained counsel and filed a Form 1-589 Application for Asylum and for Withholding of Removal. Because she had been placed in withholding-only proceedings, Calla Mejia also submitted a formal written motion setting forth her reasons for believing that she was eligible for asylum. Specifically, Calla Mejia asserted that her original order of removal was invalid because she had not been given a genuine chance to apply for relief. And because she “did not meaningfully waive her rights to seek asylum or pursue an appeal during her first removal proceedings,”- she argued that she remained eligible for asylum in the present proceedings. Calla Mejia also *593 contended that “the relevant provisions of the [INA] do not preclude an individual subject to a reinstatement of removal order from applying for asylum.” J.A. 134.
At the merits hearing, before taking testimony as to Calla Mejia’s claim for withholding of removal, the immigration judge addressed her application for asylum, stating that she was “inclined to conclude that [Calla Mejia was] not eligible for asylum.” J.A. 13. The immigration judge offered to “flesh” out her reasoning on the asylum issue “in a written decision,” but noted that would “take some more time.” J.A. 13. Calla Mejia responded through counsel that she had been in detention for “almost six months” and was “adamant” about getting released from custody as soon as possible. J.A. 15. Calla Mejia therefore “opt[ed] just for the withholding only proceeding,” J.A. 14-15, and indicated that if the immigration judge granted her withholding claim, she would “withdraw” the asylum application and “waive any appeal of the asylum issue,” J.A. 16.
Following Calla Mejia’s testimony, the immigration judge found that “she [met] all of the requirements, for withholding under the INA.” J.A. 40. The judge informed Calla Mejia that if she wanted to pursue her asylum claim, “for the record ... I would certainly want to 'do a ... thorough decision on that and issue a written decision,” which Calla Mejia could appeal. J.A. 41. The immigration judge then explained that she would “do a very short decision orally granting ... withholding of removal,”' and that if Calla Mejia “waive[d] appeal, [the oral decision] would be a final order.” J.A. 44. However, the immigration judge indicated that if Calla Mejia wished to pursue the asylum claim, the court would not issue a.decision until later in a written order. Beyond any doubt the immigration judge was willing and able to issue a ruling on Calla Mejia’s claim for asylum.
At this point, Calla Mejia indicated that she would “rather have the decision now” and unequivocally stated that she was “withdraw[ing] that [asylum claim] for the oral decision today,” so as to obtain her release from detention. J.A. 45. The immigration judge then ruled, granting Calla Mejia’s “application for withholding of removal under the INA.” J.A. 46. Counsel confirmed that Calla Mejia was, waiving appeal of the immigration judge’s order, and DHS likewise waived appeal. On February 17, 2016, the immigration judge entered an order granting Calla Mejia’s claim for withholding of removal under the INA. There this case should have ended.

Calla Mejia’s Petition for Review

A month later, however, on March 17, 2016, Calla Mejia filed this petition for review in our court, asserting the very claim she raised and then withdrew during proceedings before the immigration judge—that she had the right to raise an asylum claim before the immigration judge even though she was subject to a reinstated order of removal.[1] Calla Mejia based this contention on the plain language of the INA, which provides that “[a]ny alien” may apply, for asylum “irrespective of such alien’s status,” 8 U.S.C. § 1158(a)(1). According to Calla Mejia, “DHS wrongfully denied [her] the chance to apply for asylum.” Brief of Appellant at 17 (emphasis added). And she now seeks an order from this court sending her asylum issue back *594 to an immigration judge where she was before.
The Attorney General responded by filing a motion to dismiss the petition for review for lack of jurisdiction. The Attorney. General argued that Calla Mejia failed to exhaust her asylum claim before the immigration judge or the BIA, having “filed a motion requesting asylum,” but having withdrawn that motion “at the conclusion of her proceedings in Immigration Court.” Respondent’s Motion To Dismiss at 8. Noting that Calla Mejia “also expressly waived 'appeal to the [BIA] and filed no such appeal,” the Attorney General asserted that “there is no decision from the Immigration Judge or the [BIA] regarding Petitioner’s asylum arguments” for this court to review. Id.
Calla Mejia filed a memorandum in opposition to the motion tó dismiss. Relying on Etienne v. Lynch, 813 F.3d 135 (4th Cir. 2015), she argued that “[u]nder current agency regulations, ... Calla Mejia had no right to seek asylum from either an immigration judge or the BIA,” and that the exhaustion rule therefore did not preclude her from raising an asylum claim in her petition for review to this court. Petitioner’s Opposition to Motion to Dismiss at 6. '
Finally, in reply, the Attorney General emphasized that Calla Mejia “had an opportunity to file an appeal to the Board of Immigration Appeals raising her current legal claims, but failed to avail herself of that opportunity.” Respondent’s Reply to Opposition to Motion to Dismiss at 1 (citing 8 C.F.R. § 1208.31(e)). In responding to Calla Mejia’s argument that the “agency afforded her no avenue for appeal” with regard to her asylum claim,- the Attorney General contended that this ignored both “the extensive colloquy before the Immigration Judge prior to her waiver of her appeal rights,” and “the regulation at 8 C.F.R. § 1208.31(e), which, specifically authorized an appeal to the Board.” Id. at 2; see.8- C.F.R. § 1208.31(e) (“Appeal-of the immigration judge’s' decision shall lie to the Board of Immigration Appeals.”). The Attorney General argued that Calla Mejia’s belief that the BIA “was going to rule against her [did] not relieve her of the obligation to exhaust her administrative remedies by filing ■ an appeal with the [BIA].” Id. at 6. ■
II.
According to the majority, Calla Mejia may now escape the consequences of her considered and strategic decision to withdraw her claim for asylum and waive any appeal of that issue because, in its view, Calla Mejia had no forum to litigate her asylum claim.and because the immigration judge and the BIA would have likely ruled against her. For the reasons discussed below, I cannot agree with the majority’s decision to allow Calla Mejia to make an end run around the administrative tribunal, and to its willingness to excuse Calla Mejia from her counseled choices and the representations she made to the immigrar tion judge. I would dismiss Calla Mejia’s petition for review in its entirety for lack of jurisdiction, and I would not reach the merits of the asylum claim.
A. Exhaustion
An alien must exhaust “all administrative remedies available to the alien as of right” before filing a petition for review, of a final order of removal. 8 U.S.C. § 1252(d)(1). An alien who.fails to raise a particular claim before the BIA fails to exhaust that claim. See Tiscareno-Garcia v. Holder, 780 F.3d 205, 210 (4th Cir. 2015). This court lacks jurisdiction to review any claim that is not administratively exhausted. See id.; 8 U.S.C. § 1252(d)(1).
■ This court has excused the exhaustion requirement for due process claims be *595 cause the BIA generally has no authority to address or remedy such constitutional claims. See Farrokhi v. INS, 900 F.2d 697, 700-01 (4th Cir. 1990). When the constitutional claims concern procedural errors that may be addressed and remedied by the BIA, however, exhaustion is still required., See Kurfees v. INS, 275 F.3d 332, 337 (4th Cir. 2001). As my colleagues rightly observe, we excused the exhaustion requirement in Etienne v. Lynch, 813 F.3d 135, 138 (4th Cir. 2015). There, we explained that “in expedited removal proceedings, an alien has no opportunity to challenge the legal basis of his removal,” and thus need not satisfy the exhaustion' requirement. Id. at 138 (emphasis added). Stated differently, the alien there was not provided “with an avenue to challenge the legal conclusion” that he was subject to expedited removal. Id. at 140 (internal quotation marks omitted).
This case is not like Etienne. First, the BIA has the authority to decide the legal argument raised by Calla Mejia—that “the relevant provisions of the [INA] do not preclude an individual subject to a reinstatement of removal order from applying for asylum,” J.A. 134, and that “[t]o the extent that 8 C.F.R. § 208.31(e) allows withholding of removal only, this regulation conflicts with controlling statutory authority,” J.A. 135 (internal quotation marks omitted). By contrast, Etienne involved expedited removal proceedings, over which a DHS officer—who need not be an attorney or have any specialized legal training—presides. See Etienne, 813 F.3d at 139. Unlike an immigration judge, a DHS officer is typically not qualified to address questions of law such as whether an alien is an “aggravated felon” subject to, expedited removal proceedings. Furthermore, “aliens subject to expedited removal [not only] do not appear before an IJ” but “they cannot appeal an adverse decision to the BIA.” Valdiviez-Hernandez v. Holder, 739 F.3d 184, 187 (5th Cir. 2013). Thus, with a claim that the hearing officer could not address and that could not be appealed to the BIA, Etienne had no “avenue to challenge the legal conclusion” that he was subject to expedited removal proceedings. Etienne, 813 F.3d at 140 (internal quotation marks omitted).
In contrast, Calla Mejia not only had an opportunity to raise her asylum claim, but she in fact filed a Form 1-589 Application for Asylum. The immigration judge had the claim before her and the authority to decide whether Calla Mejia could apply for asylum in light of the relevant statutes and regulations. And the immigration judge repeatedly assured Calla Mejia that, she would consider the issue carefully in a written opinion from which an appeal to the BIA could be taken. However, the immigration judge also gave Calla Mejia a choice: either an oral. decision granting withholding of removal to be entered immediately, or a written decision addressing the asylum claim to be entered later. Calla Mejia affirmatively withdrew her asylum claim so as not to delay the entry of the order granting withholding and her release from detention.
Calla Mejia now asks us to consider an asylum claim that has not been ruled upon by the immigration | judge or presented to the BIA. To the extent she contends that the exhaustion requirement should be excused because it would have been futile to present her claim to the BIA in view of the agency’s longstanding practice of affording withholding-only proceedings in. accordance with its own regulation, I cannot agree. Congress “expressly requires exhaustion of. administrative remedies.” Temu v. Holder, 740 F.3d 887, 899 n.4 (4th Cir. 2014) (Agee, J., dissenting); see 8 U.S.C. § 1252(d)(1) (requiring exhaustion of remedies). Accordingly, courts must “strictly enforce! ]” this requirement. Temu, 740 F.3d at 899 n.4 (Agee, J., dis- *596 sentí ng). Where “Congress has mandated exhaustion,” the statutory exhaustion requirement “is at odds- with traditional doctrines of administrative exhaustion, under which a litigant ,.. need not exhaust where doing so would otherwise be futile.” Booth v. Churner, 532 U.S. 731, 741 n.6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). The INA requires exhaustion “irrespective of the forms of relief sought and offered through administrative avenues,” and it is improper to “read futility or other exceptions into , statutory exhaustion requirements where Congress has provided otherwise.” Id,
Booth does state that exhaustion may not be required “where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint.” Id. at 736, 121 S.Ct. 1819. But to the extent a futility-like exception to the exhaustion rule survived Booth, it is extremely narrow, see, e.g., United States v. Copeland, 376 F.3d 61, 66-67 (2d Cir. 2004), and does not apply here. Booth concluded that an inmate’s claim for monetary' relief had to be exhausted even though the prison’s internal grievance procedure had no provision for the recovery of money damages. Under Booth, a remedy is available as of right where “the administrative process has authority to take some action in response to a complaint, but not the remedial action [the complainant] demands.” Booth, 532 U.S. at 736, 121 S.Ct. 1819. Such was the case here.
Before bringing her asylum eligibility claim to this court, Calla Mejia should have presented it to the BIA, despite the long odds of success, for it to consider anew. . •
B, Waiver
Finally, even assuming that futility could, in some instances, excuse a failure to exhaust, the merits of Calla Mejia’s argument are still not properly before us. As the government contends, Calla Mejia did not merely fail to raise the asylum question, she raised the issue and then intentionally and affirmatively withdrew it and explicitly gave up the right to appeal to the BIA. Calla Mejia thus did not simply forfeit the issue, she waived the issue, which extinguishes any claim of error and leaves us with nothing to review. See United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (noting that “forfeiture is the failure to make the timely assertion of a right,” while “waiver is the intentional relinquishment or abandonment of a known right,” and explaining that issues that are waived are not reviewable at all, because waiver “extinguishes]” any error (internal quotation marks omitted)); United States v. Robinson, 744 F.3d 293, 298 (4th Cir. 2014) (“[W]hen a claim is waived, it is not reviewable on appeal, even for plain error. Rather, a valid waiver means that there was no error at all. ... A party who identifies an issue, and then explicitly withdraws it, has waived the issue.” (internal citation 'and quotation marks omitted)).'
Relying on Selgeka v. Carroll, 184 F.3d 337 (4th Cir. 1999), the majority contends that there is no waiver here, because it would have been futile for Calla Mejia to raise the asylum issue. See Majority Op. at 582.1 believe the majority misreadsSelge-ka. Although the court in Selgeka stated that “a claim is not waived when it would be futile to raise it,” 184 F.3d at 345, courts have frequently been inexact in their usage of the terms “waiver” and “forfeiture.” See Freytag v. Com’r, 501 U.S. 868, 894 n.2, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) (noting that the Supreme Court has “so often used [waiver and forfeiture] interchangeably that it may be too late to introduce precision”) (Scalia, J., concurring); Brickwood Contractors, Inc. v. Datanet Eng’g, Inc., 369 F.3d 385, 395 n.7 *597 (4th Cir. 2004) (en banc) (noting that “[wjhile cases often use the terms ‘forfeit’ and ‘waive’ interchangeably, ■■ there is an important distinction”). Given that the facts of Selgeka involved a simple failure to raise an issue and the court’s statement that “[njothing in the record suggests that Selgeka made a knowing and intelligent decision to waive his due process claim,” Selgeka, 184 F.3d at 345, I think Selgeka’s statement that “a claim is not waived when it would be futile to raise it,” id., simply means that a futile claim is not forfeited by the failure to raise it.
In this case, because Calla Mejia knowingly waived the asylum issue, there simply is no error and nothing for this court to review. The majority therefore errs by rejecting the government’s argument that Calla Mejia waived any right to seek review of the asylum issue. Nothing in Selgeka requires a contrary conclusion.
III.
In the federal judicial system, proceedings before the Courts of Appeals are not de novo affairs where the appellate judges decide the facts for themselves and resolve all legal issues without any regard for what happened below. Instead, the job of an appellate court is to review and correct prejudicial legal errors made by district courts or administrative tribunals. In this case, however, there is nothing for us to review, because no tribunal or administrative agency has even considered the asylum issue, much less erred in resolving it. With respect to the opinion of my colleagues in the majority, I must dissent from the majority’s decision that we have jurisdiction to decide Calla Mejia’s asylum claim.[2] I concur in the majority’s decision that we lack jurisdiction to decide the balance of Calla Mejia’s petition for review.

. , Technically, Calla Mejia did not petition for review of the February 17, 2016, order. Instead, Calla Mejia filed a petition for review of the August 21, 2015, decision to reinstate the prior order of removal, asserting that the reinstated order of removal became final at the conclusion at the withholding-only proceedings. The government does not argue to the contrary.

. Because I believe this court lacks jurisdiction over it, I express no opinion on the proper resolution of the asylum issue raised by Calla Mejia.