# In re Jose Manuel ORTEGA-CABRERA et al., Respondents

File A79 540 375 - Los Angeles

*Decided July 21, 2005*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  Because an application for cancellation of removal under section 240A(b)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b)(1) (2000), is a continuing one for purposes of evaluating an alien's moral character, the period during which good moral character must be established ends with the entry of a final administrative decision by the Immigration Judge or the Board of Immigration Appeals.

(2)  To establish eligibility for cancellation of removal under section 240A(b)(1) of the Act, an alien must show good moral character for a period of 10 years, which is calculated backward from the date on which the application is finally resolved by the Immigration Judge or the Board.

FOR RESPONDENT: Jeremy R. Frost, Esquire, Los Angeles, California

BEFORE:  Board Panel:  OSUNA, Acting Vice Chairman; HURWITZ and PAULEY, Board Members.

PAULEY, Board Member:

In a decision dated April 8, 2003, an Immigration Judge denied the respondents' application for cancellation of removal under section 240A(b)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b)(1) (2000), finding that they failed to establish the requisite good moral character.  The respondents have appealed from that decision.  The appeal will be sustained, and the record will be remanded to the Immigration Judge for further proceedings.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondents are  natives and citizens of Mexico.  On August 13, 2001, the respondents were served with a Notice to Appear  (Form I-862) charging them with entering without inspection.  At their hearing, the male respondent testified that the female respondent and their newborn son entered the United States in December 1991 with the aid of a smuggler, to whom the male respondent paid $850.

The Immigration Judge determined that the respondents were subject to the provisions of section 212(a)(6)(E)(i) of the Act, 8 U.S.C. § 1182(a)(6)(E)(i) (2000), which states that "[a]ny alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is inadmissible." The Immigration Judge further concluded that the respondents' violation of section 212(a)(6)(E)(i) precluded a finding of good moral character under section 101(f)(3) of the Act, 8 U.S.C. § 1101(f)(3) (2000), because it occurred within the 10-year period preceding service of the Notice to Appear.

## II. ISSUE

This case requires us to determine the boundaries of the period during which good moral character must be shown in order to establish eligibility for cancellation of removal under section 240A(b)(1) of the Act.

## III. APPLICABLE STATUTES

Section 240A(b)(1) of the Act provides in pertinent part:

> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien–
> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
> (B) has been a person of good moral character during such period . . . .

Section 240A(d)(1) of the Act provides in pertinent part:

> For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) . . . when the alien is served a notice to appear under section 239(a) . . . .

This so-called "stop-time" rule of section 240A(d)(1) was enacted by section 304(a)(3) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-595 (effective Apr. 1, 1997) ("IIRIRA").

## IV. ANALYSIS

Before the enactment of section 240A(d)(1) of the Act, we consistently treated the continuous physical presence period, and consequently the good moral character period, as continuing to accrue through the time that we decided an alien's appeal. *See, e.g.*, *Matter of Castro*, 19 I&N Dec. 692 (BIA 1988). We did this by construing the "application" in the continuous physical presence portion of the suspension of deportation statute as a continuing one. *See* section 244(a)(1) of the Act, 8 U.S.C. § 1254(a)(1) (1988) (providing that

an applicant be physically present for a continuous period of "not less than seven years immediately preceding the date of such application"). This approach allowed physical presence, as well as good moral character, to accrue up to and including the date that the application was resolved on appeal.[1] *See, e.g.*, *Matter of Castro*, *supra*. However, the "stop-time" rule altered the calculation of continuous physical presence by halting the accrual of such presence with the service of the charging document. *See* section 240A(d)(1) of the Act.

In the wake of the IIRIRA, there are three possible interpretations of the applicable good moral character period, assuming that it encompasses a maximum of 10 years, an issue we will address *infra*. First, the applicable period may be the 10-year period coterminous with that used to determine the length of continuous physical presence, which is bounded at the end by service of the charging document. Second, it may be the 10-year period ending on the date that the application for cancellation of removal is first filed with the court. Third, the period may be gauged by looking backward 10 years from the time a final administrative decision is rendered; that is, consistent with our long-established practice, the application would be treated as continuing beyond the date it is filed until a resolution by an Immigration Judge or the Board of Immigration Appeals is completed.

We turn to the language of section 240A of the Act for a closer examination and, in so doing, note that each of the possible interpretations presents certain problems. Looking only to section 240A(b)(1), it seems reasonable to conclude that the phrase "such period" in subparagraph (B) refers to the fixed period described in subparagraph (A), which is one "not less than 10 years immediately preceding the date of the application," i.e., the date on which the application was first filed. But this conclusion is thrown into considerable doubt when the provisions of the "stop-time" rule in section 240A(d)(1) are entered into the mix.

After extensive litigation, both within the Board and the federal courts, it has become universally established that the "stop-time" rule of section 240A(d)(1) terminates the running of an alien's continuous physical presence period for purposes of cancellation of removal. *See, e.g.*, *Ram v. INS*, 243 F.3d 510 (9th Cir. 2001); *Matter of Mendoza-Sandino*, 22 I&N Dec. 1236 (BIA 2000); *Matter of Nolasco*, 22 I&N Dec. 632 (BIA 1999). *But see Matter of Cisneros*, 23 I&N Dec. 668 (BIA 2004) (finding that service of

---

[1] We continue to treat the good moral character period in this manner for purposes of determining eligibility for voluntary departure granted at the conclusion of proceedings. *See* section 240B(b)(1)(B) of the Act, 8 U.S.C. § 1229c(b)(1)(B) (2000) (providing that to be eligible for voluntary departure an alien must, inter alia, have been a "person of good moral character for at least 5 years immediately preceding the alien's application for voluntary departure").

the charging document that is the basis for the current proceeding terminates continuous physical presence, but that service of a charging document in a prior proceeding does not prevent accrual of a new period of physical presence following the alien's departure and subsequent return). Because the phrase "immediately preceding the date of the application" in section 240A(b)(1)(A) has been held to have virtually no operative effect in determining the period of continuous physical presence, *see Lagandaon v. Ashcroft*, 383 F.3d 983 (9th Cir. 2004), the question arises whether this language should nevertheless be construed as controlling the good moral character period, or whether it is merely superfluous language.

If the provisions of section 240A were the only ones relevant to this question, we would find the divination of congressional purpose to be extremely difficult. However, we find that the scales tip decisively against either of the first two interpretations when the provisions of section 101(f) of the Act are factored into the inquiry. It is axiomatic that in interpreting a statute, all of its provisions must be considered. *See, e.g.*, *Household Credit Services, Inc. v. Pfennig*, 541 U.S. 232 (2004); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281 (1988). We must therefore determine whether equating the good moral character period with the continuous physical presence period for purposes of eligibility for cancellation relief under section 240A of the Act is consonant with the good moral character definition in section 101(f).

Section 101(f) of the Act defines good moral character by listing seven categories of aliens who cannot be regarded as possessing such character if found to be among one or more of those categories "during the period for which good moral character is required to be established." One of the seven specific categories of aliens precluded from establishing good moral character is an alien "who has given false testimony for the purpose of obtaining any benefits under this Act." Section 101(f)(6) of the Act.

We find that Congress intended this category to include an alien who testifies falsely with the intent to obtain an immigration benefit at the proceeding in which good moral character is a requirement for relief, such as a proceeding in which the alien is seeking cancellation of removal. To accept the interpretation of the good moral character period under section 240A as ending with the service of a Notice to Appear or the initial filing of an application for cancellation of removal would mean that an alien who testified falsely at his or her hearing would not be ineligible for relief as lacking good moral character. Although the alien's false testimony could be taken into account in the exercise of discretion, we think it highly likely that Congress intended such false testimony to act as a legal bar to relief as well.

Moreover, the alternate supposition that Congress intended such false testimony to be a bar only if it occurred in *another* proceeding within 10 years prior to the service of the charging instrument is equally implausible. Likewise, unless the application is regarded as a continuing one for good

moral character purposes, an alien who engages in a disqualifying act, such as alien smuggling, *after* being served with the charging document or filing the initial application, would theoretically be eligible for cancellation of removal, which we find to be a decidedly unlikely expression of congressional intent.    *See* section 101(f)(3) of the Act (referring, inter alia, to section 212(a)(6)(E) relating to alien smuggling). Finally, aside from the leftover language "such period" in section 240A(b)(1)(B), there is no indication that Congress, in creating the "stop-time" rule, intended to alter the well-established practice of treating the application as a continuing one for purposes of assessing an alien's good moral character.

Accordingly, we conclude that when the provisions of sections 240A and 101(f) of the Act are read together, the relevant period for determining good moral character for purposes establishing eligibility for cancellation of removal must include the time during which the respondent is in proceedings, i.e., until the issuance of an administratively final decision on the application. As previously noted, this is consistent with the manner in which the Board and the Immigration Judges have always interpreted similar language relating to the period for assessing good moral character for purposes of voluntary departure under section 240B(b)(1)(B) of the Act.

In this case, the Immigration Judge rendered his decision on April 8, 2003, more than 10 years after the smuggling incident.  Thus, it remains only to consider whether the result reached by the Immigration Judge may be defended on the basis that the applicable period extends *beyond* 10 years, beginning with a date 10 years prior to the date that the charging document is served, or the application is filed, and extending until a final resolution of the application by the Immigration Judge or the Board.

We hold that the period in which good moral character must be determined for eligibility purposes is 10 years, the same period (although not calculated backward from the same date) as that in which continuous physical presence is judged (i.e., "such period").  A contrary interpretation would mean that the good moral character eligibility period would be of variable and potentially extensive length, because the time required to resolve an alien's cancellation application varies from case to case and can encompass several years beyond 10.

The concept of a fixed 10-year period for determining good moral character, calculated backward from the date on which the application is finally resolved by an Immigration Judge or the Board, is also consonant with the manner in which a person's character or the impact of his or her misconduct is typically judged, because with the passage of time, an individual's bad act may fade in significance.  We find that this is a sensible notion, which Congress incorporated into section 240A of the Act so that commission of a disqualifying act beyond the 10-year period looking

backward from the date of the final administrative decision will not render an alien ineligible for relief on grounds of moral character.

In sum, we conclude that, in line with long-standing practice, an application for cancellation of removal remains a continuing one for purposes of evaluating an alien's moral character, and that the 10-year period during which good moral character must be established ends with the entry of a final administrative decision. We therefore find that the respondents were eligible to apply for cancellation of removal at the time of the Immigration Judge's decision in April 2003 and remained eligible throughout the pendency of the appeal, as the 1991 smuggling incident occurred more than 10 years earlier. Accordingly, the respondents' appeal will be sustained and the record will be remanded to the Immigration Court to give the respondents an opportunity to apply for cancellation of removal.

**ORDER:**   The appeal is sustained.

**FURTHER ORDER:**   The record is remanded for further proceedings consistent with this opinion.