[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13831
Non-Argument Calendar
_____

Agency No. A099-803-405

GUSTAVO ADOLFO AYALA AVALO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 11, 2020)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR and DUBINA, Circuit Judges.

PER CURIAM:

Gustavo Adolfo Ayala Avalo ("Avalo") petitions for review of the denial by the Board of Immigration Appeals ("BIA") of his motion to reopen his underlying removal proceedings. He first argues on appeal that the BIA did not reasonably consider his request for equitable tolling and that it erroneously considered his marriage fraud in its decision to deny his motion to reopen. Second, Avalo argues that the BIA's statement that he did not support his motion to reopen with an application and supporting evidence was clearly erroneous and a misstatement of the record and that he met the statutory requirements for cancellation of removal. Lastly, Avalo argues that the BIA erroneously failed to address his motion to reopen based on its *sua sponte* authority.

I.

We review the BIA's denial of a motion to reopen for abuse of discretion. *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009). An alien may file a motion to reopen within 90 days of the date of the final order of removal. 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.2(c). The BIA can toll this 90-day deadline when an alien establishes that: (1) he has been pursuing his rights diligently; and (2) some extraordinary circumstance stood in his way. *Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 872 (11th Cir. 2018). The alien must demonstrate both elements. *See Lawrence v. Florida*, 549 U.S. 327, 336-37, 127 S. Ct. 1079, 1087 (2007) (habeas context). Tolling is an "extraordinary remedy" that should be used sparingly, but

2

courts may toll time limitations when an inequitable event prevents a party's timely action. *Booth v. Carnival Corp.*, 522 F.3d 1148, 1150 (11th Cir. 2008).

Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), the Attorney General of the United States has discretion to "cancel removal" and adjust the status of certain nonpermanent residents. 8 U.S.C. § 1229b(1). To be eligible for such relief, a nonpermanent resident must meet certain enumerated criteria, including that the noncitizen: (1) "has been physically present in the United States for a continuous period of not less than ten years" immediately preceding the date of an application for cancellation of removal; (2) "has been a person of good moral character during such period"; (3) "has not been convicted of an offense under 8 U.S.C. §§ 1182(a)(2), 1227(a)(2), or 1227(a)(3)"; and (4) "establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child," who is a United States citizen or a lawful permanent resident. *Id*. IIRIRA also established the stop-time rule, which states that any period of continuous physical presence in the United States shall be deemed to end when the alien is served a Notice to Appear, ("NTA"). 8 U.S.C. § 1229b(d)(1)(A).

Under 8 U.S.C. § 1101(f)(6), if a person applying for cancellation of removal has "given false testimony for the purpose of obtaining any benefits under this chapter," then the BIA shall not find him to be a person of good moral

3

character.  *See Jimenez-Galicia v. U.S. Att'y Gen.*, 690 F.3d 1207, 1210 (11th Cir. 2012).  This *per se* category automatically precludes a finding that the person has good moral character.  *Id*. at 1209.  Aside from the *per se* categories, the INA has a "catchall provision," which states that any person who is not within any of the *per se* categories is not precluded from being found to be not of good moral character for other reasons.  *See id.* at 1210.  While a BIA decision that a petitioner lacks good moral character for being in one of the *per se* categories might be non-discretionary, such decision pursuant to the catchall provision is discretionary.  *Id*.  We have authority to review such discretionary decisions only if the petitioner presents questions of law or constitutional claims about the decision.  *Id*.

The relevant period for determining good moral character for the purpose of establishing eligibility for cancellation of removal must include the time during which the respondent is in proceedings, *i.e*., "until the issuance of an administratively final decision on the application."  *In re Ortega-Cabrera*, 23 I&N Dec. 793, 797 (BIA 2005).  The alien must show good moral character for a period of ten years (the same period as that in which continuous physical presence is judged), which is calculated backward from the date on which the application is finally resolved.  *Id*.  A final order of removal is a final administrative decision. *See Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009).

An immigration court is vested with jurisdiction to conduct removal proceedings upon the filing of a charging document. *See* 8 C.F.R. § 1003.14(a). An NTA is a charging document. *See Cunningham v. U.S. Att'y Gen.*, 335 F.3d 1262, 1266 (11th Cir. 2003). By statute, an NTA must specify, among other things, the time and place at which an alien's removal hearing will be held. INA § 239(a)(1)(G)(i), 8 U.S.C. § 1229(a)(1)(G)(i). But, under the regulatory framework, an NTA is not required to specify the time and place of an alien's removal hearing. *See generally* 8 C.F.R. § 1003.15.

In *Pereira v. Sessions*, the Supreme Court held—in the context of when an alien's continuous physical presence for purposes of cancellation of removal ends—that an NTA that does not specify the time and place of the removal hearing does not comport with 8 U.S.C. § 1229(a) and consequently is not an NTA at all. *See* 585 U.S. ___, 138 S. Ct. 2105, 2110 (2018). Thus, the Court held that the defective NTA does not trigger the stop-time rule. *Id.*

We have considered whether an NTA that failed to state the time and date of the hearing deprives the agency of jurisdiction over the removal proceedings. *See Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1150 (11th Cir. 2019). We held in *Perez-Sanchez* that, although an NTA's failure to specify the time of the hearing violated 8 U.S.C. § 1229, the statutory requirement was not jurisdictional. *Id.* at

5

1153-54.  We held that, instead, the requirement was a claim processing rule.  *Id.* at 1154-55.

We have jurisdiction to determine whether the BIA gave "reasoned consideration" to a petitioner's claims.  *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 803 (11th Cir. 2016).  When a decision of an Immigration Judge or the BIA "is so lacking in reasoned consideration and explanation that meaningful review is impossible," we have granted petitions for review, vacated agency decisions, and remanded for further proceedings.  *Id.*  A reasoned-consideration examination looks at whether the agency considered the issues raised and "announced its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted."  *Id.*  (alteration omitted).

While the BIA is required to consider all evidence submitted by a petitioner, "it need not address specifically each claim the petitioner made or each piece of evidence the petitioner presented."  *Id.* (quotation marks omitted).  The BIA does not give reasoned consideration to a claim when it "misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record."  *Id.*

Here, we conclude that the BIA did not abuse its discretion in failing to consider explicitly Avalo's equitable tolling argument.  The BIA was not required

6

to specifically address Avalo's equitable tolling claim, though it arguably did so implicitly by acknowledging that Avalo sought reopening of his proceedings due to the new rule of law articulated in *Pereira* and by denying his motion to reopen as untimely. *See Jeune*, 810 F.3d at 803. Further, this change in the law could not have constituted an extraordinary circumstance necessary to establish equitable tolling in this case because *Pereira* did not enable Avalo's eligibility for cancellation of removal. *See Pereira*, 585 U.S. at ___, 138 S. Ct. at 2110. *Pereira* did not remove jurisdiction from the BIA or impact Avalo's eligibility for cancellation of removal regarding the ten-year presence requirement. *See Pereira*, 585 U.S. at ___, 138 S. Ct. at 2110; *Perez-Sanchez*, 935 F.3d at 1153-55. Thus, the BIA reasonably considered his argument. *See Jeune*, 810 F.3d at 803.

Second, we conclude that Avalo's argument regarding the BIA's consideration of his admission of marriage fraud is without merit. Even if his 2005 marriage fraud was somehow outside of the relevant 10-year period, the BIA, in its discretion, could still consider it under the "catchall" provision of the INA, which is what the BIA appeared to do. *See Jimenez-Galicia*, 690 F.3d at 1210. If the BIA considered Avalo's marriage fraud as part of its discretionary authority, then we lack jurisdiction to review such consideration. *See id.* However, Avalo's marriage fraud admission would still fall within the relevant 10-year period for determining good moral character. Thus, the BIA may not have had discretion to

7

grant him cancellation of removal. *See id.* at 1209-10. Accordingly, because the BIA adequately considered Avalo's argument regarding equitable tolling, and it did not make any procedural error in considering the impact of Avalo's marriage fraud on his eligibility for cancellation of removal, we conclude that the BIA did not abuse its discretion in denying Avalo's motion to reopen as untimely.

## II.

We review our own subject matter jurisdiction *de novo*. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006). Under INA § 242(a)(2), 8 U.S.C. § 1252(a)(2), an appellate court's jurisdiction is restricted to reviewing certain final orders and denials of relief. As relevant here, our jurisdiction relating to review of the agency's discretionary decisions is set out in INA § 242(a)(2)(B)(i), 8 U.S.C. § 1252(a)(2)(B)(i), which provides that no court shall have jurisdiction to review any judgments regarding the granting of, among other things, cancellation of removal under INA § 240A, 8 U.S.C. § 1229b. *See Martinez v. U.S. Att'y Gen.*, 446 F.3d 1219, 1221 (11th Cir. 2006); *see also Alhuay v. U.S. Att'y Gen.*, 661 F.3d 534, 549 (11th Cir. 2011).

As discussed previously, the INA vests the Attorney General with the *discretion* to cancel removal of a deportable alien from the United States if he shows several criteria. *See* INA § 240A, 8 U.S.C. § 1229b; *see Martinez*, 446 F.3d at 1222-23. However, following the passage of the REAL ID Act of 2005, we

8

retain jurisdiction to decide "constitutional claims or questions of law."  INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D); *Arias v. U.S. Att'y Gen.*, 482 F.3d 1281, 1284 (11th Cir. 2007).

First, under INA § 242(a)(2)(B)(i), 8 U.S.C. § 1252(a)(2)(B)(i), we lack jurisdiction to review the BIA's determination that, even if Avalo's motion was timely, he was not entitled to cancellation of removal.  That is so, because, under the INA, the Attorney General has the sole discretion to grant that form of relief. *See* INA § 240A, 8 U.S.C. § 1229b.  Thus, as we have previously ruled, INA § 242(a)(2)(B)(i) strips this court of jurisdiction to review the Attorney General's decision to deny Avalo cancellation of removal.  *Martinez*, 446 F.3d at 1221; *Alhuay*, 661 F.3d at 549.  Accordingly, we dismiss Avalo's petition to the extent that he seeks review of the merits of that discretionary determination.  *Id.*

Second, although it appears that the BIA misstated the record by noting that, even if Avalo's motion was timely, he still did not "support" the motion "with an application for cancellation of removal . . . and supporting evidence," we do not reach this issue because Avalo's motion was untimely, as discussed above.

### III.

We lack jurisdiction to review the denial of a motion to reopen *sua sponte*. *Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1292-93 (11th Cir. 2008).

9

Here, as Avalo acknowledges in his brief on appeal, we lack jurisdiction to review the BIA's denial of his motion to reopen *sua sponte*. *See Lenis*, 525 F.3d at 1292-93. Although Avalo argues that the BIA did not consider his argument regarding a *sua sponte* reopening of the proceedings, this is belied by the record. In its written denial of Avalo's motion to reopen, the BIA recalled Avalo's arguments, including that he requested that it use its *sua sponte* authority to reopen his removal proceedings. The BIA then explained why Avalo's motion was time-barred and why it would not use its discretion to reopen the proceedings. Thus, we conclude that the BIA reasonably considered Avalo's request. *See Jeune*, 810 F.3d at 803. Accordingly, for the aforementioned reasons, we DISMISS Avalo's petition to the extent that he seeks review of the merits of the BIA's discretionary denial of his application for cancellation of removal and DENY his petition with respect to his claims regarding his motion to reopen.

**PETITION DISMISSED IN PART** and **DENIED IN PART.**