**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 24-1111**

─────────────

ALEX FRANCISCO ZALAYA ORELLANA,

Petitioner,

v.

PAMELA JO BONDI, Attorney General,

Respondent.

─────────────

On Petition for Review of an Order of the Board of Immigration Appeals.

─────────────

Argued:  March 20, 2025                          Decided:  June 24, 2025

─────────────

Before NIEMEYER, AGEE, and THACKER, Circuit Judges.

─────────────

Denied by published opinion.  Judge Thacker wrote the opinion, which Judge Niemeyer and Judge Agee joined.

─────────────

**ARGUED:**  Joseph David Moravec, BLESSINGER LEGAL, PLLC, Falls Church, Virginia, for Petitioner.  Sarai M. Aldana, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Brian M. Boynton, Principal Deputy Assistant Attorney General, Cindy S. Ferrier, Assistant Director, Andrew N. O'Malley, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────

THACKER, Circuit Judge:

Alex Zalaya Orellana ("Petitioner") is a native and citizen of Honduras who entered the United States without authorization in 2003. In October 2019, an Immigration Judge ("IJ") indicated her intent to grant Petitioner's application for cancellation of removal ("Cancellation"). But because the legislative cap of 4,000 grants of Cancellation per fiscal year had already been met, the IJ was required to reserve her decision until a visa became available for Petitioner. That visa became available in January 2023, but by then the initial IJ had retired.

Although reserved grants of Cancellation are generally granted within five days of a visa becoming available, that is not what happened here. Instead, after the visa became available, Petitioner's case was assigned to a new IJ. The case was then calendared for a new merits hearing because, in the period following the initial IJ hearing, Petitioner was charged with a felony. The new IJ ultimately denied Petitioner's application for Cancellation, finding that he lacked good moral character.

Petitioner asks us to review that denial because he claims it was in violation of what he alleges is a binding policy that requires reserved grants of Cancellation to be issued within five days. Petitioner asserts that had the policy been followed, he would have received his visa before he incurred the felony charge. We conclude that the policy Petitioner relied upon is not binding and, in any event, would not have imposed a five day deadline in this case. Therefore, we deny the petition for review.

2

I.

After entering the United States without authorization in 2003, Petitioner was placed in removal proceedings in September 2014. On August 23, 2016, Petitioner filed an application for Cancellation, which requires the applicant to demonstrate physical presence in the United States for a period of ten years, that he is a person of good moral character, that he has not been convicted of certain offenses, and that removal would result in exceptional and extremely unusual hardship to a qualifying relative. 8 U.S.C. § 1229b(b)(1)(A)-(D). In addition, the IJ must deem the applicant worthy of an exercise of discretion in his favor in order to grant Cancellation. *See generally* 8 U.S.C. § 1229a(c)(4)(A) (requiring a noncitizen to satisfy the applicable eligibility requirements and prove that he 'merits a favorable exercise of discretion.'); *Cortes v. Garland*, 105 F.4th 124, 129 (4th Cir. 2024).

At Petitioner's initial Cancellation hearing, there was no dispute that Petitioner satisfied the physical presence requirement, and he had not been convicted of any disqualifying offense. Thus, the questions at issue were whether Petitioner had demonstrated undue hardship and whether he was worthy of an exercise of discretion in his favor. IJ Traci Hong held merits hearings on Petitioner's application for Cancellation on April 17, and October 7, 2019. During those hearings, Petitioner argued that his minor daughter would suffer undue hardship if he were removed due to her prior mental health diagnoses and because of the risks she would face if she accompanied Petitioner to Honduras. At the close of the October 2019 merits hearing, IJ Hong explained this was "not the easiest case I've ever decided," and that Petitioner is "the one who's making this

3

decision hard because of [his] ongoing decade-long problem with alcohol." J.A. 596–97.[1]

Indeed, Petitioner suffered from alcoholism and had prior arrests and convictions for public intoxication, reckless driving, and driving under the influence. Nevertheless, IJ Hong determined that Petitioner's daughter would suffer an extreme hardship if he were removed, and, thus, IJ Hong indicated that she would grant Petitioner's application for Cancellation to "err on the side of caution." *Id.* at 596.

But IJ Hong informed Petitioner that she could not issue a decision that day because the statutory cap for grants of Cancellation had already been met for the fiscal year. Instead, she was "going to request a [Visa] number . . . [and] issue a decision as soon as the number becomes available." J.A. 597. Notably, IJ Hong warned Petitioner that he must "deal with the underlying issue with alcohol" because if he obtained more alcohol related driving offenses or otherwise violated the law, a different IJ would not be likely to grant his application. *Id.* at 598. Additionally, IJ Hong reminded Petitioner that the Department of Homeland Security ("DHS") had reserved the right to appeal the decision "which means they're going to take you to [the] Board of Immigration Appeals ["BIA"] [and] you will be in the system for years." *Id.* at 598–99.

On March 28, 2023, DHS filed a motion to re-calendar proceedings on Petitioner's application for Cancellation. The motion explained that DHS had "informed the court on January 14, 2023 that updated background checks [for Petitioner] were clear and that the Immigration Court could issue its decision and DHS would reserve appeal." J.A. 744.

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

However, because Petitioner had been arrested on February 24, 2023 -- a little over a month after the visa was cleared to issue -- for "felony hit and run in violation of [Virginia] Code § 46.2-894," DHS requested that the IJ re-calendar proceedings to "evaluate whether [Petitioner] still merits relief." J.A. 744.

By this time, however, IJ Hong had retired. The case was re-assigned to IJ Raphael Choi, who granted the motion to re-calendar and scheduled another merits hearing for June 7, 2023. At the hearing, IJ Choi acknowledged that IJ Hong had intended to grant Petitioner's application. DHS argued that IJ Choi should consider all of the requirements for Cancellation anew. IJ Choi disagreed and determined that the issues of presence and hardship had been fully litigated before IJ Hong. Thus, the only issues IJ Choi agreed to consider in the new hearing were those related to Petitioner's new criminal charge, that is, Petitioner's good moral character and his worthiness of a favorable exercise of discretion.

On July 28, 2023, IJ Choi issued a written decision explaining that he had familiarized himself with the record as required by 8 C.F.R. § 1240.1(b). After considering the entire record, including Petitioner's criminal history, continued problem with alcohol, and repeated violations of the law, IJ Choi determined Petitioner was not of good moral character and did not merit a favorable exercise of discretion. Thus, IJ Choi denied Petitioner's application for Cancellation.

Petitioner appealed to the BIA and argued, among other things, that the Executive Office of Immigration Review ("EOIR") was required by 8 C.F.R. § 1240.21 and its Operating Policies and Procedures Memorandum 17-04: *Applications for Cancellation of*

5

*Removal or Suspension of Deportation that are Subject to the Cap* ("OPPM 17-04"),[2] to issue IJ Hong's grant of Cancellation within five days of being notified that a visa was available. Petitioner calculated that deadline as January 20, 2023, which was five days after DHS notified the EOIR that Petitioner's background check was clear and the visa could be issued.

The BIA rejected that argument:

> The respondent argues the Immigration Judge erred by recalendaring his removal proceedings and reassessing his previously granted application for cancellation of removal . . . . However, as the respondent acknowledges, OPPM 17-04 states that a newly-assigned Immigration Judge is not bound by the first Immigration Judge's reserved decision. *See* OPPM at 5. Further, although this agency memorandum provides useful guidance as to the time frame for an Immigration Judge to resolve a cancellation case when a visa number becomes available, it is not legally binding such that it creates a remedy for when that time frame is exceeded.

J.A. 267. The BIA further affirmed IJ Choi's conclusions that Petitioner was not of good moral character and did not merit a favorable exercise of discretion to be awarded Cancellation.

Petitioner timely filed this petition for review of the BIA's decision, limited only to its decision on the procedural requirements of 8 C.F.R. § 1240.21 and OPPM 17-04.

II.

Where the BIA issues its own decision, this court's review is limited to the BIA's decision. *See, e.g., Hernandez-Avalos v. Lynch*, 784 F.3d 944, 948 (4th Cir. 2015).

---

[2] OPPM 17-04 is available at https://perma.cc/DK3W-KNCS.

Because Cancellation is a discretionary form of relief, the factual findings or discretionary determinations of the BIA are not subject to review. 8 U.S.C. § 1252(a)(2)(B); *Patel v. Garland*, 596 U.S. 328, 331 (2022). Nevertheless, we retain jurisdiction to review constitutional claims and questions of law de novo. 8 U.S.C. § 1252(a)(2)(D); *see Garcia Hernandez v. Garland*, 27 F.4th 263, 268 (4th Cir. 2022).

III.

A.

Cancellation is a discretionary form of relief that permits noncitizens to obtain lawful permanent resident status. *See Jaghoori v. Holder*, 772 F.3d 764, 767, 769 (2014). Cancellation is considered an "extraordinary remedy," *Huicochea-Gomez v. INS*, 237 F.3d 696, 700 (6th Cir. 2001) (quoting *Mejia Rodrigue v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999)), reserved for the "most deserving" circumstances, *Hylton v. Sessions*, 897 F.3d 57, 65 (2d Cir. 2018). Because the grant of Cancellation entitles the applicant to a visa, Congress has placed a cap on the number of cases in which the Department of Justice ("DOJ" or "Respondent"), may exercise its discretion to grant cancellation -- 4,000 grants per fiscal year. 8 U.S.C. § 1229b(e)(1).

Per DOJ regulation, "[w]hen grants [of Cancellation] are no longer available in a fiscal year, further *decisions* to grant such relief *must be reserved* until such time as a grant becomes available under the annual limitation in a subsequent fiscal year." 8 C.F.R. § 1240.21(c)(1) (emphases supplied). In order to ensure uniform handling of cases subject to the statutory cap, the EOIR's Office of the Chief Immigration Judge ("OCIJ") adopted OPPM 17-04, which explains that "[w]hen the cap is about to be reached, the [OCIJ] will

7

notify Immigration Judges that they must reserve decisions granting cancellation or suspension." OPPM 17-04 at 2.

Section V of OPPM 17-04 provides that when an IJ concludes that Cancellation "is potentially going to be granted," she "must reserve the decision" and take certain steps including "[p]repar[ing] a draft reserved decision." OPPM 17-04 at 3–4. Section VI then explains that the IJ may draft a dictated decision within 15 working days of the hearing or draft a written decision within 60 days of the hearing. *Id.* at 4. But those draft decisions are not "released to the parties or the public," so they do not become part of the record of the case. *Id.* at 5. Instead, they are held internally on the EOIR network or with the court administrator. When EOIR determines that a visa number is available, it notifies the IJ that the decision may be issued. "Within 5 days of being notified that a number is available, the [IJ] will revise the decision, if necessary, and sign and return it to the [court administrator] for issuance." *Id.*

Additionally, before permitting grants of Cancellation to issue, the EIOR requests updated background checks from DHS. "If DHS determines that the background check has revealed new criminal history . . . DHS will decide whether to file a motion to recalendar and, if so, will file the motion as usual with the court." OPPM 17-04 at 6 n.6.

Separately, Section IX establishes the applicable procedure when "the [IJ] who drafted the reserved decision is unavailable to issue that decision when a number becomes available." OPPM 17-04 at 5.

> If the Immigration Judge who drafted the reserved decision is unavailable to issue that decision when a number becomes available, an Assistant Chief Immigration Judge shall reassign

> the case to him or herself or to another Immigration Judge. The newly-assigned Immigration Judge "shall familiarize himself or herself with the record in the case" and shall state in the written decision "that he or she has done so." 8 C.F.R. § 1240.l(b). The newly-assigned Immigration Judge is not bound by the original Immigration Judge's preliminary decision but should consider, among all the other facts and circumstances present, that the original Immigration Judge had an opportunity to see and hear the witness(es) testify.

*Id.*

### B.

Citing 8 C.F.R. § 1240.21(c)(1) and OPPM 17-04, Petitioner argues that Respondent was required to issue IJ Hong's reserved grant of Cancellation within five days of DHS notifying it that Petitioner's background was clear and that the grant could be issued, that is, by January 20, 2023. In Petitioner's view, Respondent violated the regulation and its own policy by not issuing the reserved grant by January 20, 2023, but instead waiting over two months to take action on his application, during which time Petitioner obtained the new criminal charge. Petitioner argues that it was improper for Respondent to re-calendar his case because the grant should have been issued well before DHS moved to re-calendar on March 28, 2023. And Petitioner argues he was prejudiced because if Respondent had not -- in his view -- unlawfully delayed issuing the decision, he would not have had a change in circumstances that warranted re-calendaring or denial of his application.

Respondent argues that Petitioner's challenge must fail because OPPM 17-04 is not binding and therefore does not create any enforceable right. Respondent alternatively argues that, in any event, OPPM 17-04 would not have required a ruling within five days

9

here because the case was assigned to a new IJ.  We agree with Respondent on each argument.

1.

"[T]he *Accardi* doctrine . . . provides that when an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid." *Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008); *see United States ex rel. Accardi v. Shaughnessy*, 247 U.S. 260, 268 (1954).  But the "doctrine generally does not apply to an agency's internal memoranda, at least those that are neither designed to protect individual rights nor intended to have the force of law."  *Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021) (citations omitted).

In *Morton v. Ruiz*, the Bureau of Indian Affairs, employing an internal, unpublished policy, denied applications for general benefits to individuals who did not live on a reservation.  415 U.S. 199, 230–31 (1974).  The Supreme Court considered that the Administrative Procedures Act ("APA") and the Bureau's internal regulations all required the publication of directives that "inform the public of privileges and benefits available and of eligibility requirements."  *Id.* at 235 (internal quotation marks omitted).  The Court found that the publication requirement in the Bureau's internal policies was intended to benefit potential beneficiaries and, therefore, held the Bureau to *that* standard.  The Court also invalidated the Bureau's attempt to limit general assistance benefits to otherwise eligible beneficiaries based on the unpublished eligibility requirement.

Where internal policies are "not intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion," or when the case

10

is not such that "an agency [is] required by rule to exercise independent discretion [but] has failed to do so," "there is no reason to exempt th[e] case from the general principle that it is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it." *American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 538–39 (1970) (cleaned up). In that instance, the agency action "is not reviewable except upon a showing of substantial prejudice to the complaining party." *Id.* (citation omitted); *see United States v. Morgan*, 193 F.3d 252, 267 (4th Cir. 1999) (explaining that even where an agency violates its own rules, its actions are not void unless the petitioner demonstrates "prejudice resulting from the violation"); *City of Fredericksburg, VA v. FERC*, 876 F.2d 1109, 1112 (4th Cir. 1989) ("[A]n administrative agency has discretion to relax or modify internal housekeeping regulations that serve as mere aids to the exercise of the agency's independent discretion, as long as the complaining party has not suffered substantial prejudice." (cleaned up)).

As an initial matter, there is nothing in the text or substance of OPPM 17-04 that indicates it is for the benefit of any individual applicant or intended to have the force of law. To the contrary, OPPM 17-04 sets only internal policies intended to allow for orderly "handling [of] cases involving cancellation of removal . . . that are subject to the cap." OPPM 17-04 at 2. In addition to the sections discussed above, OPPM 17-04 explains how court staff must update internal systems each fiscal year, and it directs administrative and clerical staff to mark cases with certain codes to allow for internal tracking. *See generally* OPPM 17-04. Therefore, we conclude that OPPM 17-04 does not create any individual

11

right.  This determination is in accord with the decisions of our sister circuits that have considered this and other similar internal procedures.  *See Romeiro de Silva v. Smith*, 773 F.2d 1021, 1024 (9th Cir. 1985) (considering an "intra-agency guideline" and determining that it conferred no substantive benefit and did not have the force of law); *Prokopenko v. Ashcroft*, 372 F.3d 941, 944 (8th Cir. 2004) (addressing OPPM 00–01 regarding credibility findings and finding that "[i]t is doubtful that an internal agency memorandum of this sort could confer substantive legal benefits upon [noncitizens] or bind the [agency]"); *see also Lara v. Garland*, 845 F. App'x 566, 567 (9th Cir. 2021) (finding that OPPM 17-04 is an internal directive that does not have the force of law); *Garcia-Membreno v. Sessions*, 688 F. App'x 296, 298 (5th Cir. 2017) (observing with respect to OPPM 97-2 that that "[n]ot all agency publications are of binding force"); *Krisnawati v. U.S. Att'y Gen.*, 333 F. App'x 432, 433 (11th Cir. 2009) (finding with respect to OPPM 00-01 that "such internal immigration operating instructions do not have the force of law").

As explained above, Cancellation is a discretionary form of relief.  And "[w]hen grants are no longer available in a fiscal year, further *decisions* to grant such relief *must be reserved* until such time as a grant becomes available under the annual limitation in a subsequent fiscal year."  8 C.F.R. § 1240.21(c)(1) (emphases supplied).  Thus, while IJ Hong had indicated her intent to grant Petitioner's application in accordance with the governing regulations, the proceedings were stayed and no decision had issued.  On those facts, Petitioner had no legal entitlement to a decision within five days of the visa becoming available.  Instead, as IJ Hong had warned, Petitioner was required to maintain good moral character and remain worthy of a favorable exercise of discretion until a final decision

issued in his case, whether from an IJ or following an appeal to the BIA. *See Matter of Ortega-Cabrera*, 23 I&N Dec. 793, 798 (BIA 2005). But Petitioner did not do so.

As Respondent points out, IJ Hong warned Petitioner that he must "deal with the underlying issue with alcohol" because a different IJ would not be likely to grant his application. J.A. 598. And DHS had reserved the right to appeal the decision "which means they're going to take you to [the BIA and] you will be in the system for years." *Id.* at 598–99. In other words, IJ Hong made clear to Petitioner from the beginning that he must maintain good moral character for the entire duration of his case. Even if the reserved grant of Cancellation had been issued by January 20, 2023, Petitioner would have still been in BIA proceedings when he incurred the new criminal charge. Therefore, we conclude that he was not substantially prejudiced by any delay in issuing a final decision.

2.

Even if OPPM 17-04 were binding, we alternatively hold that Petitioner would still not be entitled to relief. As explained above, the five day limit on which Petitioner bases his claim appears in Section VI of OPPM 17-04. Section VI outlines the applicable procedure when the IJ who prepared the draft decision remains available to issue it. But, here, IJ Hong, who prepared the draft decision, was no longer available to issue it because she had retired. And OPPM 17-04 makes clear that "[i]f the Immigration Judge who drafted the reserved decision is unavailable to issue that decision when a number becomes available," Section IX controls. OPPM 17-04 at 5. Crucially, Section IX contains no timing provision. Instead, it explains that the newly assigned IJ "shall familiarize himself or herself with the record in the case" and "is not bound by the original [IJ's] preliminary

13

decision." *Id.* Nothing in Section VI or Section IX purports to direct that a newly assigned IJ must also comply with the five day limit to modify, sign, and return the reserved decision. Indeed, it is implausible to think that a newly assigned IJ could adequately "familiarize himself or herself with the record in the case" as required by 8 C.F.R. § 1240.1(b), while still complying with Section VI's five day time limit.

Therefore, we conclude that, even if it were otherwise binding, OPPM 17-04 would not have required Respondent to issue a decision on Petitioner's application for Cancellation within five days of being notified that a visa was available.

## IV.

Because we conclude that OPPM 17-04 is not binding and would not have required a decision by any specific deadline in this case, the petition for review is

*DENIED*.

14